IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID D. RICHARDSON,<br><br>                Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                Defendant. | CIVIL ACTION<br>NO. 23-3089 |

**OPINION**

**Slomsky, J.**                                                                                                  **August 5, 2024**

## I.    INTRODUCTION

On August 11, 2023, pro se Plaintiff David D. Richardson initiated this case against Defendants the United States of America ("United States") and Karen Flagherty-Oxler[1] alleging that the Veteran's Affairs ("VA") Medical Center in Philadelphia, Pennsylvania, violated his constitutional rights by mishandling his grievance. (Doc. No. 1 at 3.)  In the months following the filing of the first Complaint, Richardson filed two Amended Complaints (Doc. Nos. 6, 14), and on December 11, 2023, Plaintiff filed a Motion for Leave to file a Third Amended Complaint (Doc. No. 26).  On December 27, 2023, the Court granted Plaintiff's Motion to File a Third Amended Complaint (Doc. No. 30) and deemed the Third Amended Complaint (Doc. No. 31) the operative Complaint in this Case.  On January 31, 2024, the only Defendant remaining in the case—the United States—responded to Plaintiff's Third Amended Complaint by filing a Motion to Dismiss. (Doc. No. 34.)  On February 16, 2024, Plaintiff filed a Response in Opposition to the Motion to

---

[1] Karen Flagherty-Oxler was terminated as a Defendant on December 27, 2023.  (See Doc. No. 30.)

1

Dismiss (Doc. No. 35) and Defendant filed a Reply on February 23, 2024 (Doc. No. 37). Defendant's Motion to Dismiss (Doc. No. 34) is now ripe for disposition by the Court and for reasons discussed below, the Motion will be granted.

## II. BACKGROUND

The following facts, as alleged in Plaintiff's Third Amended Complaint ("TAC") (Doc. No. 31), are accepted as true on the Motion to Dismiss.[2] On May 30, 2023, while Plaintiff was a patient at the VA Medical Center in Philadelphia, Pennsylvania, he "filed a grievance with [the VA] Medical Center's grievance department" for being denied access to the outdoors. (Id. at 2.) And because of his prior experience with filing grievances, he alleges in the TAC that his current grievance will be subjected to an unconstitutional grievance process. (Id.) Specifically, Plaintiff argues that the grievance process employed by the VA medical center is unconstitutional because it violates his procedural due process rights. (Id.) In support of this contention, he concludes that the VA grievance process "does not allow for an evidentiary hearing," nor "provide an opportunity to appear before an impartial tribune," which he asserts is a violation of his procedural due process rights. (Id.)

## III. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV.     ANALYSIS

In construing Plaintiff's pro se allegations in the TAC liberally, he alleges that the VA Medical Center's grievance process is unconstitutional. (See Doc. No. 31.) While Plaintiff acknowledges that his grievance has not yet been denied, he argues that he has a right to an evidentiary hearing in front of a neutral decision-maker on his grievance.[3] (See Doc. No. 58 at 6.) Accordingly, he is bringing a procedural due process claim against the United States based on what he perceives will be improper inactions of its agency—the United States Department of Veterans Affairs. (Doc. No. 31 at 1-2.) Defendant argues that this claim should be dismissed because Plaintiff does not state a claim for a violation of procedural due process. (Doc. No. 34 at 18.) For the reasons discussed below, the Court agrees.

"To state a claim for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property' and (2) the procedures available to him did

---

[3] Specifically, Plaintiff states in his Third Amended Complaint:

> I seek the court's judicial intervention pursuant to Article III. Section 2 of the United States Constitution, in order to determine if the plaintiff is entitled to a[n] evidentiary hearing in order to resolve material issues of disputed facts and, whether the plaintiff is entitled to appear before an impartial tribunal in terms of the plaintiff's grievance pending before the defendant for adjudication.

(Doc. No. 31 at 3.) Further, during the hearing on the Motion to Dismiss, Plaintiff states:

> I'm trying to get the Court to exercise this Article 3 jurisdiction to say that upon remand, yes, he is entitled to appear before an impartial decision maker; and yes, he is entitled to an evidentiary hearing in order to resolve all material issues of fact. That's what I'm trying to get the Court to do prior to going back down to the defendant and having this hearing.

(Doc. No. 58 at 35:7-14.)

not provide 'due process of law.'" Winter v. Pennsylvania State University, 172 F.Supp.3d 756, 765 (M.D. Pa. 2016) (quoting Hill v. Borough of Kutztown, 455 F.3d 225, 233–34 (3d Cir. 2006)). Under the first requirement, "the threshold question is whether a plaintiff has identified a protected property [or liberty] interest" within the Fourteenth Amendment's protection. Dunmore School Dist. v. Pennsylvania Interscholastic Athletic Association, 505 F.Supp.3d 447, 460 (M.D. Pa 2020). As the court explained in Dunmore:

> Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) . . . The Supreme Court has stated that "a mere unilateral expectation . . . is not a property interest entitled to protection.

Id. (citations omitted). Further, "[p]roperty interests may be created by state or federal statute, municipal ordinance or by an express or implied contract." Bowers v. City of Wilmington, 723 F.Supp.2d 700, 706 (D. Del. 2010) (quoting Bishop v. Wood, 426 U.S. 341, 344, (1976)). Insofar as liberty interests are concerned, "[l]iberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." Bruton v. Minor, 568 F.Supp.2d 480, 486 (D. Del. 2008) (quoting Hewitt v. Helms, 459 U.S. 460, 466 (1983)). Without a specific state statute providing a liberty interest, courts must look to the due process clause. See, e.g., Cyr v. Addison Rutland Supervisory Union, 955 F. Supp. 2d 290, 296 (D. Vt. 2013). While courts emphasize "that it is no small thing for a court to say that something is a cognizable liberty interest, such that procedural due process is applicable," Id., relevant here, is the recognized liberty interest to be free from bodily restraint and punishment. See Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.").

5

Here, Plaintiff's claim fails on the first element because he is unable to identify a protected property or liberty interest that he is being deprived of. Rather, he concedes that first requirement of a procedural due process claim is not alleged and then skips to the second requirement by contending that the VA grievance procedures available to him are unconstitutional.[4] But the second element may not be reached until the first element is satisfied.

Plaintiff's grievance is "being denied access to the outdoors." (Doc. No. 31.) Even though Plaintiff concedes that there is no deprivation of liberty or property in this denial, the Court has attempted to locate any state or federal statute, municipal ordinance, or an express or implied contract from which it can be said that Plaintiff has a property or liberty interest in access to the outdoors during a voluntary stay at the VA hospital. (See Doc. No. 31 at 2.) None has been found.

---

[4] Notably, at the hearing on the Motion to Dismiss, Plaintiff recognized that he did not allege a protected property or liberty interest:

> The Government: As it relates to the substance of a constitutional claim, Your Honor, I would just reiterate that there is no deprivation of liberty or property that would amount to a cognizable claim before this Court.
>
> . . .
>
> Mr. Richardson: That's only because it didn't happen yet. It did not happen yet. That's what I'm trying to prevent from happening.
>
> The Court: All right. If a constitutional right has not yet been violated, is there a case in controversy? . . .
>
> Mr. Richardson: Yeah, I'm trying—I'm trying to get the Court to exercise this Article 3 jurisdiction to say that upon remand, yes, he is entitled to appear before an impartial decision maker; and, yes, he is entitled to an evidentiary hearing in order to resolve all material issues of fact. That's what I'm trying to get the Court to do prior to going back down to the defendant and having this hearing.

(Doc. No. 58 at 34:20-35:14.)

Further, while individuals have a due process right to "freedom from bodily restraint," the Court could not find any cases finding a liberty interest in the rights of a hospital patient to go outside at will during a voluntary stay.[5]

Accordingly, because Plaintiff cannot establish the first element of a procedural due process claim, he is unable to state a claim for a violation of his procedural due process rights. See Dunmore, 505 F.Supp.3d at 460 (quoting Mudric v. Attorney Gen. of U.S., 469 F.3d 94, 98 (3d Cir. 2006) ("It is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie.").

Further, the cases Plaintiff relies on do not support his claim. First, Plaintiff argues that the United States Supreme Court's holding in Axon Enterprise, Inc. v. FTC grants district courts the ability to hear his constitutional claim. 598 U.S. 175 (2023). However, the Court's holding in Axon was restricted only to whether district courts had subject matter jurisdiction over agency

---

[5] Courts have consistently rejected the argument that a hospital patient is subjected to unconstitutional "bodily restraint" when they have the option to leave the hospital at will. See Doe ex rel. Tarlow v. District of Columbia, 920 F.Supp.2d 112, 122 (D.C. 2023) (quoting Campbell v. State of Washington Dep't of Soc. & Health Servs., 671 F.3d 837, 843 (9th Cir.2011)) ("Mere custody . . . will not support a [due process] claim where a 'person voluntarily resides in a state facility under its custodial rules.'"); see also Walton v. Alexander, 44 F.3d 1297, 1305 (5th Cir. 1995) (en banc) ("Although Walton's freedom was curtailed, it was he who voluntarily subjected himself to the rules and supervision of the School officials. Walton's willful relinquishment of a small fraction of liberty simply is not comparable to that measure of almost total deprivation experienced by a prisoner or involuntarily committed mental patient."); Higgs v. Latham, No. 91-5273, 1991 WL 216464, at *4 (6th Cir. Oct. 24, 1991) (unpublished opinion) ("Mrs. Higgs signed all the necessary papers for a voluntary admission, and the hospital did in fact admit her on that basis . . ..Thus, there was no 'affirmative act' by the hospital to deprive her of liberty, and therefore no triggering of the state's constitutional duty to protect those it renders helpless by confinement.").

Here, Plaintiff disagrees with the hospital policy that he contends prevented him from going outside. (See Doc. No. 31.) However, he was not being held in the VA hospital against his will, which is required to state a claim for freedom from bodily restraint in violation of the due process clause.


actions before a final decision was rendered.  Id. at 180 ("The question presented is whether the district courts have jurisdiction to hear those suits").  Here, Plaintiff neglects to recognize that in order to survive a motion to dismiss, a plaintiff must allege sufficient factual matter to state a claim.  As discussed previously, Plaintiff is unable to allege sufficient facts to even state a claim of the first element of a procedural due process violation.  For this reason, his Third Amended Complaint will be dismissed under Federal Rule of Civil Procedure 12(b)(6).[6]

Finally, Defendant argues that Plaintiff's Third Amended Complaint should be dismissed with prejudice because granting leave to amend would be futile.  The Third Circuit has held that "in the event a complaint fails to state a claim, unless amendment would be futile, the District Court must give a plaintiff the opportunity to amend [his] complaint."  Phillips v. County of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008).  "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) (citing Smith v. NCAA, 139 F.3d 180, 190 (3d Cir. 1998), rev'd on other grounds, 525 U.S. 459 (1999)).  Futility is especially relevant when a plaintiff "has already been granted leave to amend once and failed to correct the deficiencies in his initial complaint."  Floyd v. Attorney General of Pa., 722 Fed.Appx. 112, 115 n.2 (3d Cir. 2018).

Here, Plaintiff has amended his Complaint three times.  (See Doc. Nos. 6, 14, 31.)  As discussed above, while Plaintiff amended his Complaint twice without leave of Court, on December 27, 2023, the Court granted Plaintiff's Motion to File an Amended Complaint.  The Third Amended Complaint then became the operative one in this case.  (See Doc. No. 30.)

---

[6] Insofar as Plaintiff has failed to allege a protected Fourteenth Amendment interest in life, liberty or property, and his due process claim fails for that reason, there is no need to discuss his other argument that he will not be afforded a hearing before an impartial decision-maker.

Notably, the factual allegations surrounding Plaintiff's grievance, "denying the plaintiff access to the outdoors," are identical in both the initial Complaint and the Third Amended Complaint. (See Doc. No. 1 at 3.) Accordingly, because Plaintiff has already been granted leave to amend once and failed to correct the deficiencies in his initial Complaint, granting leave to amend here would be futile.

## V.  CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss (Doc. No. 34) will be granted. Plaintiff's Third Amended Complaint (Doc. No. 31) will be dismissed with prejudice. An appropriate Order follows.